1  **WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona State Building and Construction Trades Council, | No. CV-17-04446-PHX-ROS |
| Plaintiff, | **ORDER** |
| v. | |
| Mark Brnovich, in his official capacity as Attorney General of Arizona, | |
| Defendant. | |

Plaintiff Arizona State Building and Construction Trades Council believes a statutory provision Arizona enacted in 2011 as well as a statutory provision enacted in 2015 are preempted by federal law. In their current form, the statutory provisions prohibit political subdivisions of the state from requiring bidders for public contracts to enter into certain labor agreements or participate in apprenticeship programs. Plaintiff believes these provisions are preempted by, among other federal laws, the National Labor Relations Act. Plaintiff also alleges the way the provisions were passed violated other state laws. Defendant Mark Brnovich, sued in his capacity as the Attorney General of Arizona, seeks dismissal of the complaint, arguing Plaintiff lacks standing, the claims are not ripe, and the claims are barred by sovereign immunity. The motion to dismiss will be granted and the Court will provide Plaintiff with limited leave to amend.

## BACKGROUND

Plaintiff describes itself as "an association of Arizona construction trade unions . . . with a mission to provide and continue to grow an exceptional labor force." (Doc. 16 at

2). While not explicitly alleged or explained, Plaintiff apparently lobbies public entities regarding the type of labor agreements those entities should use in completing publicly funded projects such as public transportation facilities. As part of its lobbying efforts, Plaintiff believes public entities should enter into "project labor agreements." A "project labor agreement" or "PLA" "is a type of collective bargaining relationship involving multiple employers and unions that agree to abide by a uniform labor agreement in their bids on public works projects." *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 885 (9th Cir. 2018). In other words, a PLA "systemize[s] labor relations at a construction site" by ensuring the "wages, hours, and other terms of employment [are] coordinated or standardized . . . across the many different unions and companies working on the project." *Bldg. & Const. Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28, 30 (D.C. Cir. 2002).

In connection with its lobbying efforts, "[i]n late 2010 and early 2011," Plaintiff lobbied the Arizona Corporation Commission to "encourage" the use of PLAs. (Doc. 16 at 4). The Corporation Commission was close to imposing PLA-type requirements for certain work when, in direct response to Plaintiff's efforts, Arizona added a provision to A.R.S. § 34-321. The new provision precluded state agencies or political subdivisions from requiring PLAs in connection with contracts for public works. The new statutory provision stated, in relevant part,

> Agencies and political subdivisions of this state shall not require in any public works contracts that a contractor, subcontractor, material supplier, or carrier engaged in the construction, maintenance, repair or improvement of public works, negotiate, execute or otherwise become a party to any project labor agreement or other agreement with employees, employees' representatives or any labor organization as a condition of or a factor in bidding, negotiating, being awarded or performing work on a public works contract.

EMPLOYEES AND PUBLIC WORKS, 2011 Ariz. Legis. Serv. Ch. 23 (S.B. 1403).

If Arizona had not enacted this "anti-PLA provision," Plaintiff's "efforts to have political subdivisions use PLAs would have remained active and ongoing." (Doc. 16 at 5). Passage of the provision, however, allegedly prevents Plaintiff from continuing its efforts. Plaintiff alleges it wishes to "advocate for, propose, testify, and enter into negotiations with

political subdivisions to adopt PLAs" but it cannot do so at present because of the existing statute. (Doc. 16 at 5).

After the change in Arizona law regarding PLAs, Plaintiff "began working with municipalities to encourage the use of highly skilled labor on publicly funded construction projects." (Doc. 16 at 6). As part of those efforts, Plaintiff recommended "Arizona charter cities,[1] including Phoenix, Tempe and Tucson, adopt a Responsible Contractor Ordinance that would require any contractors performing work that is funded with the city's tax dollars participate in a Department of Labor approved apprenticeship program." (Doc. 16 at 6). In response to Plaintiff's actions, the state legislature passed another statute aimed at frustrating Plaintiff's work. That statute restructured A.R.S. § 34-321 and added a new prohibition on state agencies or political subdivisions from requiring bidders for public works contracts "[p]articipate or contribute to an apprenticeship program that is registered with the United States department of labor." PUBLIC WORKS—EMPLOYEES, 2015 Ariz. Legis. Serv. Ch. 144 (S.B. 1090).

Once this 2015 statute went into effect, Plaintiff stopped its lobbying efforts regarding apprenticeship programs. Plaintiff alleges it is not presently engaged in efforts to "advocate for, propose, testify, and enter into negotiations with political subdivisions" regarding apprenticeship programs but Plaintiff would like to do so. (Doc. 16 at 7).

Plaintiff's failure to engage in lobbying efforts regarding PLAs and apprenticeship programs is allegedly because of a statute Arizona enacted in 2016. That statute allows for any member of the legislature to direct the Attorney General to investigate an "ordinance, regulation, order or other official action adopted or taken by the governing body of a county, city or town that the member alleges violates state law or the Constitution of Arizona." A.R.S. § 41-194.01. If the Attorney General determines the "county, city or town" has taken action contrary to state law, the Attorney General must notify the State

---

[1] "Charter cities have certain rights and privileges in local matters to legislate free from interference by the legislature. When the subject of legislation is a matter of statewide concern the Legislature has the power to bind all throughout the state including charter cities." *City of Scottsdale v. Scottsdale Associated Merchants, Inc.*, 583 P.2d 891, 892 (Ariz. 1978).

- 3 -

Treasurer and the State Treasurer must then withhold state funds the county, city, or town otherwise would receive. If there is some question whether the local action violates state law, the Attorney General is required to file a special action in the Supreme Court of Arizona to resolve the issue. The Attorney General has filed at least one special action against a local entity after concluding there was a substantial question about the legality of a local ordinance. *See State ex rel. Brnovich v. City of Tucson*, 399 P.3d 663, 672 (Ariz. 2017) (addressing City of Tucson's ordinance regarding disposition of firearms). According to Plaintiffs, this statute is so draconian that no county, city, or town is willing to "pass[] an ordinance to challenge the unconstitutional state law, including for the purpose of bringing a lawsuit." (Doc. 16 at 7).

On November 30, 2017, Plaintiff filed the present suit. The original complaint, brought solely against the State of Arizona, alleged the provisions of A.R.S. § 34-321 regarding PLAs and apprenticeship programs were preempted by federal law. The original complaint asserted two claims based on federal preemption theories. The original complaint also asserted two claims under Arizona law. Those claims alleged the relevant provisions of § 34-321 were enacted contrary to the requirements of other state laws. The State of Arizona moved to dismiss, arguing sovereign immunity barred all of Plaintiff's claims.

Instead of responding to the first motion to dismiss, Plaintiff amended its complaint to name the Attorney General as the sole defendant. (Doc. 16). The Amended Complaint contains the same four claims. That is, two federal claims and two state-law claims. Plaintiff seeks only injunctive and declaratory relief in the form of an order finding federal law preempts the relevant portions of § 34-321. The Attorney General now seeks dismissal of all four claims, arguing Plaintiff lacks standing, the claims are not ripe, and the claims are barred by sovereign immunity.

## ANALYSIS

### I.  State-Law Claims Barred by Eleventh Amendment

The Amended Complaint contains two state-law claims for relief. First, Plaintiff

alleges the 2011 and 2015 amendments to § 34-321 violated Arizona's Voter Protection Act because the amendments had the effect of amending citizen initiatives passed in 2006 and 2016. Pursuant to Arizona law, any amendments to citizen initiatives must be passed by at least "three-fourths of the members of each house of the legislature." Ariz. Const. art. IV, Pt. 1 § 1(6)(C). Second, Plaintiff alleges the amendments to § 34-321 violated a provision in the Arizona constitution allegedly granting cities the authority to set wages and salaries within the cities' boundaries. Ariz. Const. art. XIII, § 2. The Court need not reach the merits of these two arguments because the Eleventh Amendment forbids a federal court from entering an injunction requiring a state official comply with state law.

In general, the Eleventh Amendment bars suits in federal court against states and state officials. *See Lacano Investments, LLC v. Balash*, 765 F.3d 1068, 1072 (9th Cir. 2014). Plaintiff attempts to avoid that bar by invoking the exception recognized in *Ex parte Young*, 209 U.S. 123 (1908). The *Ex parte Young* exception allows a federal court to "enjoin a state officer to conform his future behavior to federal law." *Suever v. Connell*, 439 F.3d 1142, 1148 (9th Cir. 2006). But the *Ex parte Young* "exception does not apply when a suit seeks relief under state law, even if the plaintiff names an individual state official rather than a state instrumentality as the defendant." *Doe v. Regents of the Univ. of California*, 891 F.3d 1147, 1153 (9th Cir. 2018). *See also Suever*, 439 F.3d at 1148 (noting relief "premised solely on the State's compliance with state law" is "clearly barred by the Eleventh Amendment"). Here, there is no dispute that Plaintiff's state-law claims are brought against the Attorney General in his official capacity and seek relief solely because of alleged violations of state law. Therefore, the Eleventh Amendment bars the Court from reaching the merits of the state-law claims.

Plaintiff's response to the motion to dismiss regarding his state-law claims presents two unsupported arguments. Plaintiff first argues the Eleventh Amendment bar applies when a plaintiff is seeking a mandatory injunction but not, as here, when a plaintiff is seeking only a prohibitory injunction. *Cf. Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009) (comparing prohibitory and mandatory

injunctions). Plaintiff does not cite any authority for this argument and there does not appear to be any. *See Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ.*, 616 F.3d 963, 967 (9th Cir. 2010) (noting that if Eleventh Amendment applies it "bars suits . . . for all types of relief").

Plaintiff's second argument is that, if the Court concludes the Eleventh Amendment bars consideration of its state-law claims, the Court "should follow the US Supreme Court's preference for certification of such questions to the highest court of the state." (Doc. 26 at 14). This argument appears to misunderstand certification and the Eleventh Amendment bar. Certification of state-law questions is appropriate when a federal court has jurisdiction to resolve a particular claim but that claim presents "novel or unsettled questions of state law." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 77 (1997). Certification is not appropriate, however, when a court lacks jurisdiction to hear the claim at issue. When a court lacks jurisdiction to hear a claim, the only possible outcome is dismissal of that claim. *See Morongo Band of Mission Indians v. California State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988) ("If jurisdiction is lacking at the outset, the district court has no power to do anything with the case except dismiss."). Because the Eleventh Amendment means the Court lacks jurisdiction over Plaintiff's state-law claims, the only possible outcome is dismissal of those claims. And even if the Court were not obligated to dismiss the state-law claims at this point, certifying the issues to the Arizona Supreme Court would be futile. Assuming the Court were to certify the issues, and then receive answers from the Arizona Supreme Court, this Court would still have no power to do anything. Plaintiff's state-law claims must be dismissed.

**II.     Plaintiff Lacks Standing Regarding Its Federal Claims**

Plaintiff has presented two federal claims: "Preemption Under the National Labor Relations Act" and "Preemption Under ERISA and the Fitzgerald Act." In general, Plaintiff believes the cited federal laws preempt Arizona's attempt to limit local entities' ability to require PLAs and require participation in apprenticeship programs. Defendant's primary argument for dismissal of these claims is that Plaintiff lacks standing. Plaintiff

has not identified any concrete injury it has suffered or is about to suffer, meaning Plaintiff lacks standing.

To have standing "[t]o seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Defendant argues Plaintiff cannot meet any of these requirements. Plaintiff's opposition only addresses some of the requirements leaving the impression that Plaintiff itself recognizes it cannot establish standing. In an abundance of caution, however, the Court will briefly explore some of the requirements and why Plaintiff falls short.

To begin, it is not entirely clear what injury Plaintiff believes it is under a threat of suffering. Plaintiff alleges that, prior to the statutory changes, it was engaged in "efforts to have political subdivisions use PLAs" as well as "efforts to have political subdivisions" participate in apprenticeship programs. (Doc. 16 at 5, 7). The statutory changes allegedly prompted Plaintiff to abandon those efforts. This suit, however, does not appear to be based on events that occurred at the time of the statutory changes. That is, Plaintiff's injury is not the frustration of agreements Plaintiff was negotiating or had already secured at the time of the statutory changes. Rather, Plaintiff's injury appears to be that Plaintiff would like to "advocate for, propose, testify, and enter into negotiations with political subdivisions" regarding PLAs and apprenticeship programs but the statutory changes prevent it from doing so. The Amended Complaint, however, does not explain how the statutory changes themselves are preventing or have prevented Plaintiff from engaging in its lobbying efforts.

The Amended Complaint does not contain any factual allegations regarding restrictions on Plaintiff's ability to lobby local governments regarding PLAs and apprenticeship programs. Based on the Amended Complaint, it appears Plaintiff remains entirely free to engage in its lobbying efforts and attempts to change lawmakers' beliefs

about PLAs and apprenticeship program. Thus, Plaintiff has not suffered any "concrete and particularized" injury to its ability to lobby.

Although not clearly articulated, it is possible that Plaintiff's theory of injury is that its planned lobbying efforts would be futile considering the statutory changes. In support of this potential theory, the Amended Complaint alleges the statute allowing for the removal of a local entities' funding has a "chilling effect" such that no local entity will ever undertake the official action Plaintiff desires. (Doc. 16 at 13). But even assuming this is Plaintiff's theory of injury, Plaintiff has not alleged any facts to support it. For example, Plaintiff has not alleged facts that any local entity desires or hopes to require PLAs or require participation in apprenticeship programs but is prohibited from doing so by the statutory changes.

Plaintiff apparently believes local entities have been "chilled" from pursuing PLAs or apprenticeship programs but Plaintiff has not included any factual allegations supporting this. At present, it is entirely possible that no local entity has any desire to pursue PLAs or apprenticeship programs, regardless of the statutory changes. If that is true, the statutory changes have not resulted in any injury to anyone. This means that, as of now, Plaintiff's only identifiable injury is an obscure impact to its lobbying interests. Plaintiff remains free to engage in lobbying but, viewed in the light most favorable to Plaintiff, it is no longer able to *successfully* lobby counties, cities, or towns. In addition to the lack of factual support, Plaintiff has not cited any authority that this type of potential threatened injury confers standing. Accordingly, Plaintiff's failure to identify a "concrete and particularized" injury it will suffer means Plaintiff lacks standing to pursue it claims.

The lack of an identifiable injury is not Plaintiff's only standing problem. The further requirements that the feared injury be "imminent" and not merely "conjectural or hypothetical" also appear fatal to Plaintiff's ability to pursue its claims. To satisfy these requirements, Plaintiff must show its alleged injury "is not too speculative for Article III purposes." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). As "repeatedly reiterated" by the Supreme Court, this means a "threatened injury must be *certainly*

- 8 -

*impending* to constitute injury in fact [and] allegations of *possible* future injury are not sufficient." *Id.*

Here, as best as the Court can determine, Plaintiff's alleged harm is that its lobbying efforts will be futile solely because of the existence of the statutory changes. But again Plaintiff has not alleged any facts that the statutes are what is preventing local entities from requiring PLAs or participation in apprenticeship programs and, without the statutes, Plaintiff's lobbying efforts would be imminently successful. Indeed, there are many reasons why local entities might not wish to adopt Plaintiff's recommendations, including a basic disagreement with Plaintiff regarding what is best as a matter of policy. Absent factual allegations establishing a county, city, or town would like to enact Plaintiff's preferred policies, but is not doing so solely because of the state statutes, Plaintiff has only identified a possible injury, not a "certainly impending" one. *Id.*

In opposing the motion to dismiss, Plaintiff does not meaningfully engage with this analysis. Instead, Plaintiff cites repeatedly to a decision by the District of Idaho where a plaintiff sought to challenge a similar state law regarding PLAs. In that case, the district court concluded an "unincorporated associations of local unions" had standing to challenge an Idaho law forbidding political subdivisions from requiring use of PLAs. *Idaho Bldg. & Const. Trades Council, AFL-CIO v. Wasden*, 836 F. Supp. 2d 1146, 1154 (D. Idaho 2011). The district court believed the plaintiffs had "a legally protected interest in both negotiating and enforcing a [PLA]." *Id.* at 1159. And the district court concluded the plaintiffs had standing because the state law was imposing an "obstacle" to the plaintiffs' "right to seek [PLAs]." *Id.* at 1160.

On appeal, the Ninth Circuit first issued a "partial remand" for the plaintiffs to supplement the record regarding their standing to pursue this claim. The plaintiffs did not submit additional evidence and the Ninth Circuit subsequently ruled the plaintiffs lacked standing because they had not offered "information suggesting any near-term likelihood that [plaintiffs] would seek a PLA" with an Idaho state or local government entity. *Idaho Bldg. & Const. Trades Council, AFL-CIO v. Inland Pac. Chapter of Associated Builders*

*& Contractors, Inc.*, 616 F. App'x 319, 320 (9th Cir. 2015).

In light of the actual history of the Idaho case, Plaintiff has not explained why the Court should look to the Idaho district court's reasoning instead of the Ninth Circuit's rejection of that reasoning. And Plaintiff appears to be in the same position as the plaintiffs in the Idaho case in that Plaintiff has not offered any allegations showing a "near-term likelihood" that Plaintiff would seek or obtain a PLA with local entity. Thus, under the Ninth Circuit's persuasive view of standing, the Idaho case supports Defendant's position, not Plaintiff's.

Finally, standing requires the feared injury be fairly traceable to the defendant and that a favorable decision would prevent or redress the injury. Assuming Plaintiff had satisfied the other elements, this final element would present a difficult issue. *See, e.g.*, *Jordahl v. Brnovich*, 336 F. Supp. 3d 1016, 1036 (D. Ariz. 2018) (noting Arizona Attorney General was appropriate defendant because there was a "clear and plausible causal chain" involving the Attorney General leading to the alleged injuries). The Attorney General does not have any direct enforcement authority under the statutory changes and whether a suit against him would provide redress is not at all clear. Plaintiff's failure to identify an imminent and non-conjectural injury means the Court need not address traceability and redressability.

### III. Leave to Amend

Plaintiff will be given one final opportunity to amend its complaint regarding its federal claims. Should Plaintiff choose to amend, it must include "further particularized allegations of fact deemed supportive of [Plaintiff's] standing." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). In particular, Plaintiff must identify the concrete injury it is likely to suffer and include allegations showing that injury is not conjectural. Plaintiff will not be granted leave to amend the state-law claims as those claims are barred by the Eleventh Amendment and any amendment would be futile.

Accordingly,

**IT IS ORDERED** the Motion to Dismiss (Doc. 23) is **GRANTED WITH**

**LIMITED LEAVE TO AMEND**. No later than **March 29, 2019**, Plaintiff may file an amended complaint containing additional facts regarding its federal claims. The Clerk of Court is directed to enter a judgment of dismissal without prejudice in the event no amended complaint is filed by that date.

Dated this 11th day of March, 2019.

Honorable Roslyn O. Silver
Senior United States District Judge